UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC
DEC 14 2015
US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 3:15cr284-FDW |
| ) | |
| ) | BILL OF INDICTMENT |
| v. ) | Violations: |
| ) | 18 U.S.C. § 1028A |
| ) | 18 U.S.C. § 1347 |
| JASON ADAM TOWNSEND ) | |

THE GRAND JURY CHARGES, at the specified times and at all relevant times:

1. From in or about 2012 to in or about August 2013, JASON ADAM TOWNSEND engaged in a scheme to defraud the North Carolina Medical Assistance Program ("Medicaid") by misusing Medicaid beneficiary identifying information to submit false and fraudulent claims for non-existent mental and behavioral health services.

**Individuals and Entities**

2. In or about 2011, TOWNSEND and another individual created Townhall Enterprises, LLC, located in Raeford, NC. Townhall provided billing services and credentialing services to mental health companies and other health providers. As third-party billing provider, Townhall received information from its clients detailing claim information to be submitted to health care benefit programs and insurance companies, including Medicaid.

3. TOWNSEND was primarily responsible for submitting clients' claims to Medicaid.

4. Cynthia Harlan (indicted elsewhere) owned and operated Heartland Consulting and Marketing, LLC ("Heartland") in Charlotte, North Carolina, from in or about 2011 to in or about 2013. HARLAN held herself out as a consultant specializing in the operation of mental health companies and Medicaid reimbursement.

5. Harlan required her clients to use TOWNSEND and Townhall as their third-party billers. These clients included, but were not limited to:

   a. Aliya Boss (charged elsewhere), located in Charlotte, NC;

   b. New Choices Youth and Family Services, LLC ("New Choices"), owned and operated by Sakeenah David Davis and Kino Williams (charged elsewhere) and located in Charlotte, NC;

   c. Life Impact Solutions, LLC, owned and operated by Zaria Humphries (charged elsewhere) and located in Charlotte, NC; and

1

d. Kings of Carolina Care 1, Inc. ("Carolina Care 1"), a company located in Rockingham, NC.

6. TOWNSEND and Townhall generally entered into Contractor Agreements with these client agencies which established, among other things, that TOWNSEND and Townhall controlled logins and passwords and would be paid 5-7% of the Medicaid reimbursements for claims that Townhall submitted.

## The Medicaid Program

7. The North Carolina Medicaid Program is a state-administered program aided by federal funds.

   a. Medicaid is designed to provide medical assistance for certain low income individuals and families. Covered services include mental and behavioral health services.

   b. The Division of Medical Assistance, North Carolina Department of Health and Human Services (herein referred to as "DMA"), administers the Medicaid Program and oversees mental health providers throughout the state who receive payments from Medicaid.

   c. In the Medicaid Program, a "provider" is defined as any individual or entity furnishing Medicaid services under a provider agreement with the Medicaid Agency. Every provider who participates in the Medicaid Program must apply for and be assigned a unique number by DMA. These provider numbers can be used to identify claims filed by and monies paid to a certain provider.

   d. In addition to assigning provider numbers, Medicaid also assigns beneficiary identification numbers. Each Medicaid patient (identified herein as "beneficiary") is assigned a unique identification number by the Medicaid Program. Each beneficiary can be identified by reference to his or her unique identification number.

8. Medicaid is a "health care benefit program," as defined in Title 18, United States Code, Section 24(b).

## The Scheme to Defraud

9. TOWNSEND and Townhall received billing instructions for clients, such as Boss, Life Impact Solutions, Carolina Care 1 and others, directly from Harlan or others acting on Harlan's behalf. These instructions generally were contained in billing spreadsheets, which Harlan emailed to TOWNSEND and others at Townhall, containing relevant claim information, such as the Medicaid beneficiary name, date of birth, Medicaid ID number, the alleged date(s) of service(s), the alleged type(s) of services and company that allegedly provided the services.

10. TOWNSEND, however, generally did not follow the instructions provided by HARLAN and the client agencies. Indeed, TOWNSEND frequently billed two or three times the amount of services he was instructed to submit to Medicaid. For example:

2

**Claims Submitted on or about March 21, 2013**

a. On or about March 20, 2013, HARLAN emailed a spreadsheet to TOWNSEND which reflected mental and behavioral health services allegedly performed by Life Impact Solutions and Zaria Humphries. This spreadsheet directed TOWNSEND to submit claims to Medicaid for approximately 268 dates of therapy allegedly provided to 14 Medicaid beneficiaries for dates of service allegedly occurring between November 2012 and March 2013.

b. TOWNSEND, however, made up different claims for these 14 Medicaid beneficiaries and increased the number of claims submitted to Medicaid. On or about March 21, 2013, TOWNSEND submitted false and fraudulent claims to Medicaid, through Humphries' Medicaid provider number, claiming that Humphries provided services to these 14 Medicaid beneficiaries on over 400 dates of service. Furthermore, TOWNSEND's false claims to Medicaid included dates of service that extended as far back as August 2012— dates which were earlier than those included in the billing instructions.

c. Specifically, the March 20, 2013 spreadsheet from Harlan represented that Life Impact Solutions provided therapy services to Medicaid beneficiary H.D. on approximately 20 dates of service. TOWNSEND, however, submitted claims alleging that H.D. had received services on 33 days, including the false and fraudulent claim that H.D. received therapy services on August 4, 2012.

**Claims Submitted on or about May 9, 2013**

d. On or about May 8, 2013, HARLAN emailed a spreadsheet to TOWNSEND which reflected mental and behavioral health services allegedly performed by CC1. This spreadsheet directed TOWNSEND to submit claims to Medicaid for approximately 304 dates of therapy services allegedly provided to 22 Medicaid beneficiaries for dates of service allegedly occurring between January and April 2013.

e. TOWNSEND, however, made up different claims for these 22 Medicaid beneficiaries and nearly tripled the number of claims submitted to Medicaid. On or about May 9, 2013, TOWNSEND submitted false and fraudulent claims to Medicaid, through Carolina Care 1's Medicaid provider number, claiming that Carolina Care 1 provided services to these 22 Medicaid beneficiaries on over 800 dates of service. Furthermore, TOWNSEND's false claims to Medicaid included dates of service that extended as far back as April 2012— dates which were far earlier than those included in the billing instructions.

f. Specifically, the May 8, 2013 spreadsheet from Harlan represented that Carolina Care 1 provided therapy services to Medicaid beneficiary A.F. on approximately 16 dates of service. TOWNSEND, however, submitted claims alleging that A.F. had received services on 43 days, including the false and fraudulent claim that A.F. received therapy services on September 28, 2012.

3

**Claims Submitted on or about June 6, 2013**

g. On or about June 5 and June 6, 2013, HARLAN separately emailed two spreadsheets to TOWNSEND which reflected mental and behavioral health services allegedly performed by New Choices. These spreadsheets directed TOWNSEND to submit claims to Medicaid for approximately 640 dates of therapy allegedly provided to 41 Medicaid beneficiaries for dates of service allegedly occurring between February and June 2013.

h. TOWNSEND, however, made up different claims for these 41 Medicaid beneficiaries and doubled the number of claims submitted to Medicaid. On or about June 6, 2013, TOWNSEND submitted false and fraudulent claims to Medicaid, through New Choice's Medicaid provider number, claiming that the company provided services to these 41 Medicaid beneficiaries on over 1300 dates of service. Furthermore, TOWNSEND's false claims to Medicaid included dates of service that extended as far back as August 2012— dates which were far earlier than those included in the billing instructions.

i. Specifically, the spreadsheet from Harlan, sent on June 5, 2013, represented that New Choices provided therapy services to Medicaid beneficiary D.M. on approximately 16 dates of service. TOWNSEND, however, submitted claims alleging that D.M. had received services on 36 days, including the false and fraudulent claim that D.M. received therapy services on January 25, 2013.

**Claims Submitted on or about June 20, 2013**

j. On or about June 18, 2013, HARLAN emailed two spreadsheets titled to TOWNSEND which reflected mental and behavioral health services allegedly performed by Boss. These spreadsheets directed TOWNSEND to submit claims to Medicaid for approximately 400 dates of therapy allegedly provided to 32 Medicaid beneficiaries for dates of service allegedly occurring between March and June 2013.

k. TOWNSEND, however, made up different claims for these 32 Medicaid beneficiaries and tripled the number of claims submitted to Medicaid. On or about June 20, 2013, TOWNSEND submitted false and fraudulent claims to Medicaid, through Boss's Medicaid provider number, claiming that Boss provided services to these 32 Medicaid beneficiaries on over 1300 dates of service. Furthermore, TOWNSEND's false claims to Medicaid included dates of service that extended as far back as September 2012— dates which were far earlier than those included in the billing instructions.

l. Specifically, the spreadsheet from Harlan, sent on June 18, 2013, represented that Boss provided therapy services to:

> i. Medicaid beneficiary M.G. on approximately 13 dates of service. TOWNSEND, however, submitted claims alleging that M.G. had received services on 44 days, including the false and fraudulent claim that M.G. received therapy services on November 15, 2012.

4

ii. Medicaid beneficiary D.B. on approximately 14 dates of service. TOWNSEND, however, submitted claims alleging that D.B. had received services on 44 days, including the false and fraudulent claim that M.G. received therapy services on December 13, 2012.

m. On or about June 20, 2013—the same day that he submitted the false claims – TOWNSEND sent a text message to Harlan asking, "can u make sure that all of the clients that u work with have them all paid up current before tomorrow for this week. We need the money badly this week. I'm gonna do my very best to make sure that everyone gets a really good check this time around . . ."

11. TOWNSEND's submission of millions of dollars in false and fraudulent claims resulted in payment from Medicaid to the providers who, in turn, compensated TOWNSEND and Townhall for the submission of the fraudulent claims.

12. During this same time period, Townhall's primary source of income was the fees it charged to clients obtained through Harlan.

# COUNTS ONE THROUGH FIVE
## 18 U.S.C. § 1347
### (Health Care Fraud)

13. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 12 of the Bill of Indictment, and further alleges that:

14. On or about the dates below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### JASON ADAM TOWNSEND

did knowingly and willfully devise a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations and promises, money owned by and under the custody and control of healthcare benefit programs, as defined in Title 18, United States Code, Section 24, in connection with the delivery of, and payment for, healthcare benefits, items and services by submitting and causing to be submitted false and fraudulent claims to the North Carolina Medical Assistance Program as follows:

| Count | Date Claim Submitted | Medicaid Beneficiary | Claimed Medicaid Provider | Claimed Date of Service | Claimed Service |
|---|---|---|---|---|---|
| 1 | 3/21/2013 | H.D. | Zaria Humphries | 8/4/2012 | Therapy |
| 2 | 5/9/2013 | A.F. | Carolina Care 1 | 9/28/2012 | Therapy |
| 3 | 6/6/2013 | D.M. | New Choices | 1/25/2013 | Therapy |
| 4 | 6/20/2013 | M.G. | Aliya Boss | 11/15/2012 | Therapy |
| 5 | 6/20/2013 | D.B. | Aliya Boss | 12/13/2012 | Therapy |

All in violation of Title 18, United States Code, Section 1347.

## COUNTS SIX THROUGH TEN
## 18 U.S.C. §1028A (a)(1) and 2
## (Aggravated Identity Theft)

15. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 12 of the Bill of Indictment, and further alleges that:

16. On or about the dates listed below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### JASON ADAM TOWNSEND

aided and abetted by others known and unknown did knowingly use, without lawful authority, a means of identification of another person, to wit, the name and Medicaid beneficiary number of the following individuals during and in relation to the commission of one or more federal felony violations, to wit, a making false statements and representations and making and using materially false writings and documents knowing the same to contain materially false, fictitious or fraudulent statements and entries, all in connection with the delivery of and payment for health care benefits, items and services, in violation of Tile 18, United States Code, Section 1035, as charged in the Counts identified below.

| Count | Date | Medicaid Beneficiary Identification Number | Medicaid Beneficiary | Claimed Date of Service | During and in relation to: |
|---|---|---|---|---|---|
| 6 | 3/21/2013 | *****2072N | H.D. | 8/4/2012 | Count 1 |
| 7 | 5/9/2013 | *****5960S | A.F. | 9/28/2012 | Count 2 |
| 8 | 6/6/2013 | *****5779Q | D.M. | 1/25/2013 | Count 3 |
| 9 | 6/20/2013 | *****9374K | M.G. | 11/15/2012 | Count 4 |
| 10 | 6/20/2013 | *****2412R | D.B. | 12/13/2012 | Count 5 |

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

7

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of the provisions of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

   a.  All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment; and

   b.  If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a)

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

A forfeiture money judgment in the amount of at least $249,329.68, such amount constituting the proceeds of the violations set forth in this bill of indictment.

A TRUE BILL

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

*[signature]*
KELLI H. FERRY
ASSISTANT UNITED STATES ATTORNEY

8